**FILED**
June 24, 2026 09:44 AM
SX-2026-SM-00039
**TAMARA CHARLES**
**CLERK OF THE COURT**



### IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
### DIVISION OF ST. CROIX

| | |
|---|---|
| **DEXTER JOHNSON,** | **CASE NO. SX-2026-SM-00039** |
| Plaintiff, | |
| v. | **ACTION FOR DEBT** |
| **IRENE HEDMAN,** | |
| Defendant. | |

Cite as 2026 VI Super 29U

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** came before the Court for trial. For the reasons stated below judgment will enter in favor of Mr. Dexter Johnson for the sum of $2,539.07 as a result of Ms. Hedman's wrongful eviction and breach of the implied warranty of habitability.

### FACTS ADDUCED AT TRAIL

Mr. Johnson leased an apartment from Ms. Hedman for the sum of $1,500 per month. The property was managed by Ms. Headman's agent, Mary Pat Strasser who was authorized to let the premises, enforce the lease terms, and take steps to evict tenants on Ms. Headman's behalf. Indeed, the lease agreement was a Seaglass Real Estate form. Testimony adduced and evidence admitted at trial confirmed that Ms. Strasser kept her principal informed of the issues raised by Mr. Johnson, the defects in the premises, and actions taken on Ms. Hedman's behalf. From the outset, Mr. Johnson complained of cleanliness of the premises, pests, plumbing issues, a lack of hot water, and inoperable cooking facilities.

Mr. Johnson testified that he entered into the lease on November 10, 2026, and immediately after he moved in complained regarding the state of affairs in the kitchen—an inoperable oven, moldy refrigerator, lack of running water in the sink, and lack of hot water throughout the apartment. He further testified that while the lack of water at the kitchen sink and the inoperability of the oven had been addressed in late November 2026, he had complained to Ms. Strasser at least twice per week during his tenancy that the premises lacked hot water. And as late as January 9, 2026, text messages between Ms. Strasser and Mr. Johnson indicate that he had not yet had a hot shower despite 3 months of dialogue on the issue. It wasn't until January 14, that hot water was made available to Mr. Johnson. At trial Ms. Hedman chalked the lack of hot water to a misunderstanding of island life –indicating her view that nobody had hot water in the islands.

It was not until Mr. Johnson withheld part of his rent on or about January 9, 2026, that the plumber was sent to switch the hot water from solar to electric. At that time Ms. Hedman's agent made thinly veiled threats of things that might happen if Mr. Johnson failed to pay the withheld rent and ultimately threatened to change the locks if Mr. Johnson did not pay the balance or vacate the premises. Mr. Johnson demanded that his rent be abated, arguing that the

lack of hot water posed habitability issues, and ultimately vacated the premises on or about February 8, 2026. At trial, notwithstanding Ms. Hedman's argument that she was entitled to rent for the entire term of the lease, she conceded that she had agreed through her agent to release Mr. Johnson from the contract. And while Ms. Hedman argued that Mr. Johnson had not notified her that he had vacated the premises, text messages between Mr. Johnson and Ms. Strasser indicate that on February 7, 2026, he notified Ms. Strasser that he had vacated.

On March 7, 2026, Mr. Johnson demanded return of his security deposit and ultimately filed this suit to collect when he did not receive a timely response or refund. Upon receipt of the Complaint in this matter Ms. Hedman filed a counterclaim for $4,046.00 representing damages for the balance of rent due under the lease; replacement of a damaged vegetable bin in the refrigerator; and 20 hours of her time cleaning the premises.

## ANALYSIS

### Breach of Implied Warranty of Habitability

The implied warranty of habitability is a common law rule adopted by a majority of jurisdictions in the United States, and which has been adopted by *Banks* analysis in the Virgin Islands. See *Ferris v. Withey*, 2014 V.I. LEXIS 128, *4-6 citing *Pugh v. Holmes*, 486 Pa. 272, 405 A.2d 897, 901, n.2 (Pa. 1979) (collecting cases); *see also Glasoe V. Trinkle*, 107 Ill. 2d 1, 479 N.E.2d 915, 918, 88 Ill. Dec. 895 (Ill. 1985) (adopting the implied warranty in Illinois). This Court will follow suit. According to the implied warranty of habitability at the inception of the rental there shall be no defects in facilities vital to the use of the premises for residential purposes, and the essential facilities will remain functional during the entire term in a condition which makes the property liveable. *Kline v. Burns*, 111 N.H. 87, 276 A.2d 248, 252 (N.H. 1971) "In order to constitute a breach of the implied warranty of habitability the defect must be of a nature and kind which will render the premises unsafe, or unsanitary and thus unfit for living therein." Simply put residential landlords should not be renting property known to be unliveable, and residential tenants should expect the rental property to be in liveable condition These are fundamental expectations in the landlord-tenant relationship, which apply to all residential tenancies in the Virgin Islands.

In *Ferris* the Court adopted rent abatement as a remedy for a landlord's breach of the implied warranty of habitability because "a landlord should not reap the benefit of collecting the total rental price contracted in a residential lease while the residential property is in an unliveable condition. Residential tenants have an expectation that the property is fit for living, as represented by the contracted rental price. In the event the property becomes unliveable, the value of the property necessarily diminishes, and the contracted rental price should be abated accordingly." *Ferris* at *6. Here, Mr. Johnson acted in a reasonable manner and immediately gave notice of the conditions making the residence unliveable, yet Ms. Hedman took the better part of 3 months to cure the defects (and only after Mr. Johnson withheld rent). In doing so, she breached the implied warranty of habitability such that Mr. Johnson is entitled to an

abatement of rent. *V.I. Hous. Auth. v. Joseph*, 13 V.I. 508[1]. In *V.I. Housing Authority v. Joseph* the Court considered appropriate rent abatement in similar circumstances and awarded a 25% abatement in rent: 15% for a defective kitchen and 10% for impacts on other rooms as well. Here, the alleged defects included defective plumbing and cooking facilities in the kitchen and a lack of hot water in both the kitchen and shower facilities which posed health and sanitation issues for the tenant. On this basis the Court finds that rent should be abated by 20%.

### *Wrongful Eviction*

Self help eviction is unlawful in the Virgin Islands. *St. Thomas House v. Barrows*, 15 V.I. 435, 440-441, 1979 V.I. LEXIS 33, *9-11 Where there has been a wrongful resort to self-help by a landlord against a tenant who is improperly holding over, the tenant is entitled to recover in tort. And once it has been established that a tort has been committed, punitive damages are appropriate for wrongful eviction. *Bell v. Bell*, 1985 V.I. LEXIS 38, *12-13 citing *St. Thomas House* In that case the landlord resorted to self-help by changing the locks and as a result, the Court awarded punitive damages in an amount which adjusted for inflation approximates $4,500 in today's dollars. Here, while Ms. Hedman's agent did not change the locks, she instead made several thinly veiled threats, and ultimately threatened to change the locks of disputed rent was not paid. Intimidation and coercion are forms of self-help eviction and will not be tolerated in the Virgin Islands. Ms. Hedman engaged in wrongful eviction, and the Court will award punitive damages in the amount of $1,000 to deter her and others from engaging in similar acts of wrongful eviction in the future.

It is without dispute that Mr. Johnson paid the sum of $5,500 during the course of his tenancy. He resided in the apartment for 3 months starting November 10, 2025, and ending February 8, 2026. On that basis, in the absence of any rent abatement, Ms. Headman was entitled to $4,500 in rent. Ms. Headman alleges that she spent 20 hours cleaning the premises after they were vacated. The Court will allow $260 as compensation for 20 hours of unskilled labor at minimum wage. Finally, she has shown that she had to replace a broken bin in the refrigerator at a cost of $100.93. All told, Ms. Hedman was entitled to $4,860.93 under the lease (before abatement of rent and application of punitive damages). On that basis, before abatement of rent and application of punitive damages, Mr. Johnson is entitled to $639.07. Mr.

---

[1] "What I find to be the most appropriate measure of damages is the determination of the difference between the fair rental value of the premises as warranted and its fair rental value in the indecent, unsafe, and unsanitary condition, as concluded herein. This measure of damages, computed on a monthly basis and multiplied by the number of months during which the defects existed, would result in a reasonable and fair sum to be credited against the gross claim of plaintiff, thereby resulting in an equitable partial abatement." citing *Mease v. Fox*, 200 N.W.2d 791, 796 (Iowa 1971); 2 R. Powell, The Law of Real Property, § § 225(2)(a), 232.3.

Johnson is also entitled to a 20% abatement of rent ($900) and punitive damages of $1,000, which, when added $639.07 he has overpaid totals.  $2,539.07.

**THE PREMISES CONSIDERED** it is hereby

**ORDERED** that Ms. Headman's Counterclaims are **DENIED WITH PREJUDICE**. It is further

**ORDERED** that judgment will enter by separate order in favor of Mr. Johnson for **$2,539.07 plus court costs**.

**DONE AND SO ORDERED** this ⟨24th⟩ day of June, 2026.

 

**HON. CHRISTOPHER M. TIMMONS, SR.**
**Superior Court Magistrate Judge**

**ATTEST:**
**TAMARA CHARLES**
**Clerk of the Court**

By: ⟨signature⟩
**Court Clerk**

Date: 6/24/26